**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

CRYSTAL BORCHERS,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,
                    Defendant.

1:19-cv-13670-NLH

**OPINION**

_____

**APPEARANCES:**

ELLEN LUBENSKY CASAGRAND
LEGAL SERVICES OF NEW JERSEY
100 METROPLEX DR.
PO BOX 1357
EDISON, NJ 08818

    *On behalf of Plaintiff*

KRISTINA CAROL EVANS COLE
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] and Supplemental Security Income

_____

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of
quarters of insured employment has suffered such a mental or

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of January 1, 2008.  For the reasons stated below, this Court will affirm that decision.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Crystal Borchers, applied for DIB and SSI on October 6, 2014, alleging disability as of January 1, 2008.[4]

---

physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] Even though Plaintiff contends that her onset date of

2

Plaintiff, who was 38 years old at the time of her alleged disability onset date,[5] claims that she can no longer work as a package handler because of her impairments of bipolar disorder, degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, and obesity.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on December 14, 2017.  On February 9, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on March 11, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

---

disability is January 1, 2008, the relevant period for Plaintiff's SSI claim begins with her October 6, 2014 application date, through the date of the ALJ's decision on February 9, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[5] Under the regulations, Plaintiff was defined as a "younger individual" (age 18-49).  20 C.F.R. § 404.1563.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold
the Commissioner's factual decisions where they are supported by
"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.
Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,
970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means
more than "a mere scintilla."  Richardson v. Perales, 402 U.S.
389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305
U.S. 197, 229 (1938)).  It means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,
845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the

4

record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks
v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th
Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.
474, 488 (1951)).

　　　The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third
Circuit has held that an "ALJ must review all pertinent medical
evidence and explain his conciliations and rejections." Burnett
v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all of the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

　　　The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> 　　　Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to

> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in

6

death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

       1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); see <u>Olsen v.</u>

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

   **C.  Analysis**

At step one, the ALJ found that Plaintiff has not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found Plaintiff's impairments
of bipolar disorder, degenerative disc disease of the thoracic
spine, degenerative disc disease of the lumbar spine, and
obesity to be severe.  At step three, the ALJ determined that
Plaintiff's severe impairments, or her severe impairments in
combination with her other impairments, did not equal the
severity of one of the listed impairments.  The ALJ then
determined at step four that Plaintiff's residual functional
capacity ("RFC")[7] precluded her from performing her past work as
a package handler, but she was capable of performing light work
with certain limitations.  At step five, the ALJ found that
Plaintiff was capable of performing jobs such as a bottle-line
attendant, electrical parts assembler, and a hospital parts
assembler, all of which exist in significant numbers in the

---

[7] The RFC reflects "what [the claimant] can still do despite [his
or her] limitations," 20 C.F.R. § 416.945(a), and the
controlling regulations are clear that the RFC finding is a
determination expressly reserved to the Commissioner and not for
a medical provider, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2),
404.1546(c), 416.946(c).

national economy.

Plaintiff presents six arguments for how the ALJ erred in her decision:

1. Did the ALJ [fail to] comply with SSR 85-15 when evaluating Ms. Borchers' mental impairments, particularly her social functioning limitations?

2. Did the ALJ inexplicably place greater weight on the opinions of non-examining reviewers than on the opinion of examining source Dr. Miller?

3. Did the ALJ err in finding Ms. Borchers capable of light work?

4. Did the ALJ erroneously diminish the importance of Ms. Borchers' multiple GAF scores?

5. Did the ALJ err in concluding that Ms. Borchers would be off task only 5% of the workday?

6. Did the ALJ fail to incorporate in her determination all the limitations supported by the record, which would have eliminated all jobs cited by the Vocational Expert?

For the reasons expressed below, the Court answers "no" to the questions presented by Plaintiff, and will therefore uphold the ALJ's decision as supported by substantial evidence.

**A.   The ALJ's evaluation of Plaintiff's mental impairments**

Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's mental impairments by not properly following SSR 85-15, by diminishing the importance of Plaintiff's GAF scores, and by not providing the proper weight to the opinions of a consultative physician who examined her.  The Court does not

10

agree.

With regard to SSR 85-15, that regulation pertains to the medical-vocational rules as a framework for evaluating solely nonexertional impairments.  Burrows v. Commissioner of Social Sec., 2014 WL 2919469, at *5 (D.N.J. 2014).  Plaintiff argues that the ability of a claimant to respond appropriately to supervisors and coworkers is a critical consideration under SSR 85-15 that the ALJ failed to adequately address despite numerous examples of Plaintiff's limitations in this area.

The GAF Scale ranges from zero to one-hundred.  An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range."  "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two."  "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care."  Gulin v. Commissioner, 2014 WL 1466488, 4 n.2 (D.N.J. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-

11

TR")).  Plaintiff argues that the ALJ failed to properly consider four GAF scores from 2013 (GAF scores of 30 and 35) and 2015 (GAF scores of 35 and 45),[8] which are supported by persuasive rationales and are consistent with the records such

---

[8] As noted, the GAF Scale ranges from zero to one-hundred.  An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range.":

A GAF of 51-60 is "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers)."

A GAF of 41-50 is "Serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

A GAF of 31-40 is "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

A GAF of 21-30 is "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR") p. 34.

that they should have been accorded significant weight.

As for the consultative examiner Dr. Miller, he, unlike other consultative examiners who only reviewed Plaintiff's records, examined Plaintiff in person on two occasions - in February 2014 and in June 2015.  Plaintiff argues that the ALJ did not adequately explain why she afforded Dr. Miller's opinions "little weight" while she afforded the other consultative examiners' opinions "some weight."

After detailing the medical and opinion evidence, as well as Plaintiff's testimony, the ALJ provided a thorough summary of the reasons to support her RFC determination that Plaintiff was capable of performing work at the light level.  This detailed analysis shows why none of Plaintiff's three arguments is availing.  The ALJ summarized:

- The claimant has described daily activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.  In her November 2014 function report, she reported cleaning herself and her home, cooking all kinds of meals daily, caring for a cat, using public transportation, shopping in stores for an hour at a time, managing her own finances, playing card games and board games, and attending church weekly (Exhibit 3E at 1-5; Exhibit 5E at 1-5).

- During the consultative examinations, the claimant reported having friends, taking care of her grooming, bathing and hygiene, doing light chores like cooking, and handling her own finances (Exhibit 4F at 2; Exhibit 8F at 3).

- During the hearing, she testified that she maintained a driver's license and could drive and that the cooked meals, shopped, took public transportation, cleaned, and helped take care of her sister's pets (Testimony).

- The claimant's treatment for her mental health impairment was almost entirely conservative.  While the claimant has reported a history of numerous psychiatric hospitalizations, her only documented hospitalization occurred in October 2013 and lasted only a few days before she was discharged in stable condition (Exhibit 9F).

- After starting treatment at SERV in early 2015, the claimant generally demonstrated a calm mood with stable symptomatology (Exhibit 1OF; Exhibit 14F).  During the June 2015 psychiatric consultative examination, the claimant admitted that her [] medications were now effective in managing her symptoms and that she was functioning better and getting along better with other household members (Exhibit 8F at 1, 3).

- During the hearing, the claimant acknowledged that she had improved significantly.  She noted that she formerly saw her psychiatric providers once a week, but was now seeing them once every month or two.  She stated that she had worked out many of her issues and had less conflict with her sister than she did prior to beginning therapy.

(R. at 26.)

This summary, along with the specific chronological recitation of the medical evidence and Plaintiff's testimony, demonstrates that the ALJ addressed Plaintiff's ability to respond appropriately to others.  The ALJ noted that even though Plaintiff had a moderate limitation in interacting with others (R. at 25), Plaintiff had the ability to attend church, have friends, and get along with family members.  The ALJ also noted

14

the consultative opinion evidence that further supported this finding.  (R. at 24.)  The ALJ did not violate SSR 85-15 as Plaintiff contends.

The ALJ also did not err in her consideration of Plaintiff's GAF scores.  Although on four occasions Plaintiff was assessed a GAF that showed a severe impairment at that time, the ALJ explained the reasons why she did not credit those GAF scores more than any other evidence.  The ALJ explained,

> GAF ratings are opinion evidence and need supporting evidence to give them weight.  By itself, the GAF rating cannot be used to "raise" or "lower" someone's level of function.  A GAF rating is only a snapshot opinion about the level of functioning.  It is one opinion that we consider with all the evidence about a person's functioning.  Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.  Here, because the GAF rating assessments of record are not supported by a persuasive clinician rationale and not entirely consistent with the treatment records, the undersigned accords them little weight.

(R. at 25.)

Unlike a situation where an ALJ fails to consider a claimant's GAF scores at all, in this case the ALJ noted Plaintiff's GAF scores and explained how those scores impacted the ALJ's overall assessment of Plaintiff's RFC.  This is consistent with the ALJ's obligations under the regulations and

the law in this Circuit.  See Lindemeyer v. Saul, 2020 WL
3397287, at *12 (D.N.J. 2020) (explaining that GAF scores
represent a "snapshot" of a claimant's current functioning, and
present vague one-time assessments which do not reflect a
claimant's overall capabilities over a significant period)
(citing Hughes v. Comm'r Soc. Sec., 643 F. App'x. 116, 119 (3d
Cir. 2016) (noting "that the latest edition of the Diagnostic
and Statistical Manual of Mental Disorders abandoned the GAF
scale as a measurement tool," and that an ALJ should not "give
controlling weight to a GAF from a treating source unless it is
well supported and not inconsistent with other evidence.")); see
also Sutherland v. Commissioner Social Security, 785 F. App'x
921, 928–29 (3d Cir. 2019) (where the plaintiff argued that the
ALJ failed to appropriately consider the low GAF scores during
the November 2008 hospitalization and relied on speculative
inferences in dismissing them, the court found that to the
contrary, the ALJ thoroughly considered the scores because (1)
it noted that the low GAF scores accurately reflect the time
period during and immediately after hospitalization, but do not
extend to later time periods; (2) it further dismissed GAF
scores, in general, as an unreliable indicator of a claimant's
overall disability status and noted that the Diagnostic and

16

Statistical Manual has since ceased use of GAF scores; and (3) it nonetheless credited the low GAF scores as reasonable for the limited time period when the plaintiff was hospitalized and in need of medical care. "Taken together, the ALJ supported its decision to credit the low GAF scores for a limited time period and dismiss the scores as indicative of Sutherland's overall RFC with substantial evidence.").

With regard to the ALJ's assessment of the consultative evaluators' opinions, the ALJ fulfilled her obligation to explain what weight she afforded to a medical opinion and why she assigned the weight as she did. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). The ALJ explained that Dr. Miller found that Plaintiff required assistance with managing funds, but this was contradicted by another consultative examiner's opinion that Plaintiff could manage her money, as well as Plaintiff's own testimony that she could handle her own finances and shop in stores. (R. at 24.) Based on this, the

17

ALJ afforded the other doctor's opinion more weight and less weight to Dr. Miller's opinions.  (Id.)

Simply because Dr. Miller evaluated Plaintiff in person does not require the ALJ to afford his opinions greater weight than non-examining consultative examiners so long as the ALJ explains why.  The ALJ properly did so here.  See 20 C.F.R. § 404.1527 (Evaluating opinion evidence for claims filed before March 27, 2017) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); cf. Tisoit v. Barnhart, 127 F. App'x 572, 575 (3d Cir. 2005) (citing Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)) ("We also conclude that the ALJ adequately explained his assignment of greater weight to the findings of the non-examining medical consultant regarding Mr. Tisoit's mental capacity and that his decision to do so is supported by the administrative record."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.... [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

**B.    The ALJ's RFC determination and step-five analysis**

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

When making the RFC determination, the ALJ is required to:

[C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that

19

are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is limited to no more than frequently climbing ramps or stairs; no more than occasionally climbing ladders, ropes, or scaffolds; no more than occasionally stooping, crouching, kneeling, or crawling; performing simple, routine tasks; working in a low stress job (defined as having only occasional decision-making and only occasional changes in the work setting); no more than occasionally interacting with supervisors, coworkers (with no tandem tasks or teamwork, working with objects rather than people), or the general public; and would be off-task 5% of the workday, in addition to regularly-scheduled breaks.

(R. at 21.)

Plaintiff argues that the ALJ erred by finding she was capable of performing light work, and as a part of that finding, the ALJ erred by finding that Plaintiff was capable of only being off-task 5% of the workday.  For the determination that Plaintiff's exertional impairments of degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, and obesity limited Plaintiff to light work, Plaintiff argues that because two consultative examiners noted that their examination findings corroborated Plaintiff's subjective complaints, and the ALJ afforded those examiners' opinions

20

significant weight, the ALJ should have found that Plaintiff's
exertional limitations were more severe.  Plaintiff also argues
that the ALJ did not properly consider Plaintiff's obesity.

As with the ALJ's analysis of Plaintiff's ability to
interact with others, Plaintiff's GAF score, and Dr. Miller's
opinions, the ALJ properly supported her determination that
Plaintiff was capable of light work with certain restrictions.
For her physical impairments, the ALJ noted that Plaintiff's
treatment had been minimal and entirely conservative, with
imaging studies showing relatively mild abnormalities.  (R. at
26.)  The ALJ further noted that Plaintiff managed her symptoms
with medications and a brief course of physical therapy, and
Plaintiff never received any injections or surgery.  (Id.)  The
ALJ also noted that in September 2015 Dr. Levitsky recommended
conservative treatment of core muscle strength building, weight
loss, and naproxen.  (Id.)  The ALJ supported these findings
with the "credible aspects of the opinions of medical
consultants Dr. Udomsaph, Dr. Briski, Dr. Starace, and Dr.
Wielczko."  (Id.)

Plaintiff points to her subjective complaints for why she
is not capable of performing light work, and certain examiners'
notations regarding her complaints.  The ALJ squarely addressed

Plaintiff's testimony and found that the medical evidence and Plaintiff's daily activities showed a greater range of functioning than Plaintiff's complaints would suggest. Plaintiff was able to clean, cook meals daily, care for her own grooming, care for her sister's cat, shop in stores, go to church, use public transportation, and drive a car.  (R. at 26.)

For Plaintiff's obesity, the ALJ noted that obesity may have an adverse impact on co-existing impairments, and that the ALJ was required to consider a claimant's obesity at steps two through five.  (R. at 20.)   The ALJ complied with this obligation by reciting Plaintiff's height, weight, and BMI, and stating that she "carefully considered the claimant's obesity in connection with her other impairments in arriving at the assigned residual functional capacity (SSR 02-lp)."  (R. at 24.) The ALJ's assessment of Plaintiff's exertional impairments, along with her daily living activities, demonstrates that Plaintiff's obesity affected her ability to work only to the extent found by the ALJ.  Plaintiff does not point to any evidence in the record that her obesity caused more restrictions than those found by the ALJ.

Regarding the ALJ's finding that Plaintiff would be off-task 5% of the workday, Plaintiff argues that it is an arbitrary

finding without support in the record.  The Court disagrees.
The ALJ noted that the record evidence showed that Plaintiff had
a moderate limitation in concentrating, persisting, or
maintaining pace, and that the treating records showed that
Plaintiff often presented as distractible and sometimes
scattered and tangential.  (R. at 19.)  The ALJ further noted,
however, that Plaintiff was agreeable to redirection and
receptive to feedback, and her activities of daily living of
shopping, cooking, cleaning, taking public transportation,
managing her finances, playing card games and board games, and
her retained ability to drive all demonstrated concentration and
persistence, including the ability to deal with the stress
inherent in the operation of a motor vehicle.  (Id.)  The ALJ
also considered the VE's testimony, who stated that a person who
was off-task 10% of the workday would preclude that person from
all work.  (R. at 73.)  Thus, in formulating Plaintiff's RFC,
which as noted above is only the province of the ALJ to
determine and not any medical or other source, the ALJ properly
supported her determination that the evidence did not warrant a
10% off-task limitation, but rather a 5% off-task limitation.
Plaintiff disagrees with this finding but it is supported by
substantial evidence.  See, e.g., Perkins v. Barnhart, 79 F.

App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

Finally, Plaintiff argues that the ALJ failed to incorporate in her determination all the limitations supported by the record, and if she had done so, it would have eliminated all jobs cited by the Vocational Expert.  Plaintiff argues that the ALJ failed to include in the hypothetical to the VE Plaintiff's issues with unscheduled supervision and the potential for Plaintiff to engage in verbal altercations with co-workers.

Plaintiff's argument is unavailing because to the extent that Plaintiff had issues with supervisors and coworkers, the ALJ accounted for those in the RFC.  (R. at 21 ("[W]orking in a low stress job (defined as having only occasional decision-

making and only occasional changes in the work setting); no more than occasionally interacting with supervisors, coworkers (with no tandem tasks or teamwork, working with objects rather than people).)  The ALJ also included these limitations as reflected in the RFC in her hypotheticals to the VE.  (R. at 69, 71, 72.) Indeed, the ALJ specifically asked the VE about a person who had issues with supervisors and a person who would get into altercations with co-workers.  (Id.)

Moreover, an ALJ is only required to pose hypotheticals to a VE that contain the claimant's medically established impairments, rather than all of the impairments a claimant claims.  See Pidgeon v. Colvin, 2016 WL 2647666, at *13 (D.N.J. 2016) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)) ("[A] hypothetical posed to a vocational expert must reflect all of a claimant's impairments.  But this do[es] not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.  Rather, in posing a hypothetical to the VE, references to all impairments encompass only those that are medically established.  And that in turn means that the ALJ must accurately convey to the vocational

25

expert all of a claimant's credibly established limitations.  As the Third Circuit noted in <u>Rutherford</u>, objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.  Accordingly, if the ALJ did not incorporate the limitation into the RFC, then the ALJ did not need to incorporate the limitation into the hypothetical posed to the VE." (internal quotations omitted)).  Thus, the ALJ did not err in the hypotheticals presented to the VE.

## III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  <u>Hartzell v. Astrue</u>, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The Court finds that the ALJ's determination that Plaintiff was not totally disabled as of January 1, 2008 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date:  July 20, 2020                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.


26